112.    At no time before April 2007 did Ross F. Charno or Irving Charno advise, suggest, inform or even hint to Melvin Gale that they had asked any other individuals, including one of his best friends, Stanley Spielman, to loan, contribute or provide any money to the escrow account Goldman Sachs had allegedly required RFC Securities to maintain. Defendants acted as if, and treated, their communications and transactions with Melvin Gale as confidential.

**The April 2007 Death of Irving Charno.**

113.    In early 2007, Irving Charno's health worsened and, by the end of April 2007, he succumbed to his illness and passed away.

114.    Before his death, Irving Charno executed a Power of Attorney in favor of Ross F. Charno allowing him to execute any and all documents "to effectuate the closing, whether that be conveying or refinancing" of Irving Charno's residence in Bocaire.

115.    After securing the Power of Attorney, Ross F. Charno executed through the Power of Attorney a one million dollar ($1,000,000.00) mortgage on Irving Charno's residence in Bocaire.

116.    Around the time of Irving Charno's death in mid to late April 2007, Melvin Gale and Stanley Spielman for the first time learned that they had each been victims of Ross F. Charno's unlawful scheme.

117.    Stanley Spielman and Melvin Gale spoke to Irving Charno prior to his entry into a Hospice program and inquired about the status of the loans, specifically, the principal. Irving Charno at that time again represented that all of the money was safe and in the escrow account at Goldman Sachs.

118.    Stanley Spielman and Melvin Gale subsequently made several inquiries to Ross F. Charno about the status of the principal and made numerous requests that he return the money. In response, Ross F. Charno ultimately told them in late April 2007 that all of the money

*Gale v. RFC*
*Amended Complaint*

was "lost."

119.    Understandably saddened at the death of their friend, Stanley Spielman and Melvin Gale were at the same time shocked to learn in late April 2007 that all of the money they had loaned to RFC Securities was "lost."

120.    Despite RFC Securities', Ross F. Charno's and Irving Charno's material representations to Stanley Spielman and Melvin Gale that the money they had independently loaned to RFC Securities would not be used for trading purposes or for any purpose other than satisfying an escrow requirement of Goldman Sachs, it became evident that they were both the victims of organized and repetitive scheme involving undue influence, fraud, conversion and theft, all orchestrated by Ross F. Charno.

121.    Understandably, Stanley Spielman and Melvin Gale retained legal counsel to address the disappearance of their millions of dollars.

**Defendants' Ratification of Acts and Omissions of Irving Charno and the Civil Conspiracy**

122.    During the lifetime and after the death of Irving Charno, Ross F. Charno and RFC Securities ratified all statements, representations, actions, omission of material fact and active concealment of material fact of Irving Charno as described herein.

123.    All statements, representations, actions, and omissions of Irving Charno as referenced in this Complaint were made in furtherance of Ross F. Charno's unlawful scheme.

124.    RFC Securities and Ross F. Charno confirmed all representations made by Irving Charno both orally and through written communications, as described herein.

125.    Ross F. Charno, Miriam Charno and Amanda Charno accepted and retained the benefits of Irving Charno's actions, actions which were at all times material under the direction, supervision and control of Ross F. Charno.

126.     Each Defendant agreed to act and in fact did act in conspiracy with each Defendant to implement and further Ross F. Charno's unlawful scheme.

127.     Ross F. Charno's unlawful scheme was unlawful or, alternatively, constituted lawful acts by unlawful means, because Defendants obtained Plaintiffs' money through fraud, undue influence and overreaching. Defendants therefore obtained and used Plaintiffs' money through conversion and civil theft and, as explained below, through criminal acts.

128.     Each Defendant acted overtly in pursuance of the conspiracy in implementing Ross F. Charno's unlawful scheme, as described above. For example, Irving Charno, RFC Securities and Ross F. Charno made oral and written representations, omissions of material fact and active concealment of material fact, including those in the Loan Confirmation Letters. Miriam and Amanda Charno actively participated in the conspiracy by, among other things, signing their names on correspondence and other agreements, specifically including the various guarantees which were intended to create a false sense of security in Plaintiffs that there money was safe and not being converted, stolen and depleted by Defendants.

129.     As explained in the various Counts below, Plaintiffs were damaged as a result of the Defendants' acts done in furtherance the conspiracy.

130.     Each Defendant willingly and knowingly benefited and profited from the conspiracy and to this date retain the benefits of Ross F. Charno's unlawful scheme.

131.     Because of the Defendants' civil conspiracy, every act and declaration of each Defendant is an act and declaration of all Defendants.

132.     Each Defendant, as a co-conspirator, is liable for and bound by the acts and declarations of each conspirator Defendant done or made in furtherance of the conspiracy, even if not present at the time.

*Gale v. RFC*
*Amended Complaint*

## Plaintiffs' Notices and Demands for the Return of Their Money

133.    Under the terms of the Note, the Note became immediately due and payable based upon the death of Irving Charno because he was a guarantor of the Note. See Exhibit "I."

134.    After having been advised by Ross F. Charno in late April 2007 that all of the money Stanley Spielman and Melvin Gale loaned to RFC Securities was "lost," any requirements for notice or demand for the return of any of the money became futile.

135.    Nonetheless, on May 29, 2007, Melvin Gale and Stanley Spielman, through legal counsel, made written demand for documentation explaining what Defenddants did with their money. To date no material response other than "it was all lost" has been provided. A copy of the May 29, 2007 Demand is attached hereto as **Exhibit "L."**

136.    Through the May 29, 2007 Demand, Melvin Gale additionally provided written notice and demand that the Note was in default and due based upon the death of Irving Charno and based upon the default for failing to comply with the terms of repayment.

137.    Although it is futile for Plaintiffs to make any additional demands upon Defendants based upon Ross F. Charno's advisement to Plaintiffs that all of the money was "lost," to ensure full compliance with any and all conditions precedent, Plaintiffs made additional written demands under the personal guarantees and under Fla. Stat. § 772.11 on July 27, 2007 and August 8, 2007, respectively. The Demand letters are attached hereto as **Composite Exhibit "M."**

138.    Over ninety days have passed since the first demands to Defendants and over thirty days have passed since the May 29, 2007 and the July 27, 2007 written demands to Defendants.

139.    To date Defendants have failed to return the principal or the interest due to Plaintiffs. In fact, the futility of making any additional demands for return of the funds was

*Gale v. RFC*
*Amended Complaint*

confirmed by Defendants' counsel, Russel T. Beyer, when he responded to an October 1, 2007

inquiry from Plaintiffs' counsel regarding the whereabouts of any remaining funds. Beyer

responded by stating in his October 3, 2007 letter: "I was not aware of any monies still existing.

This was the last response from any representative of any Defendant regarding the status of or

location of any of the Plaintiffs' monies at issue in this Action. The October 1 and October 3,

2007 Letters are attached hereto as **Exhibit "N."**

**The Crimes Committed by Ross F. Charno, RFC Securities and Irving Charno.**

140.    All actions of Ross F. Charno, RFC Securities, and Irving Charno as described

herein were accompanied with criminal intent or acted upon with criminal intent.

141.    Because of the ongoing scheme to commit fraud and theft as described herein,

Ross F. Charno, RFC Securities, and Irving Charno acted with felonious intent.

142.    Ross F. Charno, RFC Securities, LLC, Irving Charno, Miriam Charno and

Amanda Charno acted in a concerted and continual series of acts evolving from a preconceived

purpose to unlawfully obtain and use the money of Plaintiffs, as described herein.

143.    By planning, implementing, engaging in, carrying out and directly benefiting

financially from the theft and unauthorized use of Plaintiffs' money, as described herein, each

Defendant committed the crime of grand theft in violation of Fla. Stat. § 812.014(2)(a).

144.    By planning, implementing, engaging in, carrying out and directly financially

benefiting from the actions described herein, each Defendant committed the crime of theft from

persons 65 years of age or older in violation of Fla. Stat. § 812.0145.

145.    By planning, implementing, engaging in, carrying out and directly financially

benefitting from the actions described herein, each Defendant committed the crime of making

false statements to obtain property in violation of Fla. Stat. § 817.03.

146.    By planning, implementing, engaging in, carrying out and directly financially

*Gale v. RFC*
*Amended Complaint*

benefitting from the actions described herein, each Defendant committed the crime of securities

fraud in violation of Fla. Stat. § 517.302 and also committed wire fraud.

## Venue and Jurisdiction

147.    Venue is proper in Palm Beach County because the causes of action alleged in

this Complaint accrued in Palm Beach County, Florida.

148.    Venue is proper because the January 2007 Note attached hereto as Exhibit "I"

is due and payable, and guaranteed by each Defendant to be paid, to the Trust in Boca Raton,

Florida.

149.    Jurisdiction is proper in the Circuit Court because Plaintiffs seek damages in

an amount that exceeds Fifteen Thousand Dollars ($15,000.00, exclusive of costs and attorneys'

fees.)

150.    Plaintiffs are entitled to recover their fees and costs in this action, as explained

below.

151.    All conditions precedent to the filing of this action have been satisfied or

waived by Defendants, or have become futile, as thoroughly explained above in Paragraphs 134

and 139.

### Count I: Fraud and Civil Conspiracy to Commit Fraud: Stanley Spielman

152.    Plaintiff, Stanley Spielman, incorporates and re-alleges Paragraphs 1 through

79 and 113 through 151 as if fully restated herein.

153.    This is an action by Stanley Spielman against RFC Securities, Ross F. Charno,

Irving Charno and Miriam Charno for declaratory relief and damages based upon fraudulent

inducement, an ongoing and organized scheme of misrepresentation of material facts, an ongoing

and organized scheme of omission of and concealment of material facts, on ongoing and

organized scheme of undue influence and overreaching and for civil conspiracy to commit and

*Gale v. RFC*
*Amended Complaint*

perpetuate fraud.

154.    Irving Charno was at all times acting in furtherance of the conspiracy to implement and further Ross F. Charno's unlawful scheme.

155.    Irving Charno made misrepresentations of material fact to Stanley Spielman and Melvin Gale as described in this Complaint.

156.    The material misrepresentations specifically included the statements to Plaintiffs that the money Irving Charno was requesting each of them to deposit into the purported Goldman Sachs escrow account would not be directly traded or invested and that the monies would be maintained in a separate escrow account which would not be accessible or used for any purpose and that the money would be available for return to Plaintiffs on demand after a short notice period.

157.    Each Defendant confirmed all representations made by Irving Charno both orally and through written communications, as described herein.

158.    Each Defendant continued and perpetuated the original fraud on Plaintiffs in order to induce loan after loan under false and fraudulent pretenses.

159.    Each Defendant continued and perpetuated the original fraud on each Plaintiff by omitting the material fact and concealing the material fact that the Defendants were unlawfully transferring, using, converting, stealing and depleting the Plaintiffs' money rather than keeping it in the purported Goldman Sachs escrow account.

160.    At the time Irving Charno made the fraudulent statements and at the time the statements were confirmed by each Defendant, Defendants never intended to keep the money they obtained from Plaintiffs in the purported Goldman Sachs escrow account.

161.    At the time Irving Charno made the fraudulent statements and at the time the statements were confirmed by each Defendant, Defendants secretly intended to use or divert the

money for trading, direct investment purposes or for other unlawful uses rather than maintaining the money in the purported Goldman Sachs escrow account.

162.    Irving Charno's statements to Plaintiffs were material in Plaintiffs' decisions to lend their money to RFC Securities and Plaintiffs reasonably relied on Irving Charno's representations.

163.    RFC Securities and Ross F. Charno's affirmative statements, both oral and written, confirming the material misrepresentations of Irving Charno and RFC Securities and Ross F. Charno's omissions of material facts and the active concealment of material facts regarding the ongoing unlawful use, transfer and depletion of the monies were material to Stanley Spielman's decision to provide loan after loan to RFC Securities and to Ross F. Charno.

164.    At the time of the material misrepresentations and the material omissions of material facts to Stanley Spielman, RFC Securities, Ross F. Charno, Irving Charno, and Miriam Charno secretly intended to use the money for trading or direct investment purposes or for other unlawful uses rather than maintaining the money in the purported Goldman Sachs escrow account and were in fact at the time of the representations unlawfully using, transferring and depleting or diverting Stanley Spielman's money.

165.    Miriam Charno actively participated in the conspiracy by, among other things, signing her name on the September 13, 2006 letter and by executing the guarantee attached hereto as Exhibit "E."

166.    Stanley Spielman was entitled to rely upon and did in fact reasonably rely upon the representations, acts and omissions of Irving Charno, RFC Securities, Ross F. Charno and Miriam Charno in making each initial loan and in making every subsequent loan to RFC Securities.

167.    The ongoing and organized scheme of misrepresentation of material facts and

the ongoing and organized scheme of omission of material facts were the sole and proximate cause of each decision by Stanley Spielman to make each loan to RFC Securities.

168.    Had Stanley Spielman known that Defendants intended to and were in fact transferring, using, converting and depleting the money they obtained through the loans he would not have made any loan to RFC Securities.

169.    But for RFC Securities, Ross F. Charno, Irving Charno, and Miriam Charno's active concealment of material fact, including their retention of and refusal to share with Stanley Spielman the investment and accounting documents showing the unlawful use of his money, Stanley Spielman would not have loaned any additional funds to RFC Securities.

170.    Because of the fraudulent behavior, the concealment of material fact, the undue influence and the overreaching by RFC Securities, Ross F. Charno, Irving Charno, and Miriam Charno, the ability of Stanley Spielman to negotiate fair terms and make informed decisions as to whether to loan any additional funds to RFC Securities or to demand a return of the money he had already loaned, was undermined.

171.    Because of RFC Securities, Ross F. Charno, Irving Charno, and Miriam Charno's undue influence and overreaching, Stanley Spielman's free agency, decision making and willpower was weakened, allowing RFC Securities, Ross F. Charno, Irving Charno, and Miriam Charno to take further advantage of Stanley Spielman's wealth and obtain loan after loan, while these Defendants were unlawfully converting, stealing and depleting or diverting the money he had already loaned to RFC Securities.

172.    At the time RFC Securities, Ross F. Charno, Irving Charno, and Miriam Charno made each oral representation and the written representations and omissions in each Loan Confirmation and in the guarantee, these Defendants knew the money which they were asking Stanley Spielman to loan and the money which he had already loaned was intended to and

*Gale v. RFC*
*Amended Complaint*

was in fact being unlawfully used, transferred, converted and depleted or diverted from the escrow account wherein the funds were represented to safely remain.

173.    Stanley Spielman has been damaged by his reasonable reliance on the representations, acts and omissions of these Defendants.

174.    The facts which these Defendants concealed from Stanley Spielman caused loss, injury and actual damages to Stanley Spielman.

175.    The facts which these Defendants concealed from Stanley Spielman were "existing facts" directly related to these Defendants' improper and unlawful use, transfer and depletion or diversion of his money.

176.    The unlawful representations, acts and omissions of these Defendants were perpetrated and effected with malicious and felonious intent.

177.    These Defendants had knowledge of and actively participated in furthering the unlawful and criminal acts of Ross F. Charno and participated in implementing and furthering the Ross F. Charno unlawful scheme and thus RFC Securities, Ross F. Charno, Irving Charno, and Miriam Charno conspired to commit and perpetuate fraud, undue influence and overreaching.

178.    The independent civil wrong effectuated pursuant to these Defendants' conspiracy is the fraud, undue influence and overreaching described herein.

179.    These Defendants were fully aware of the wrongs being inflicted upon Stanley Spielman through the civil conspiracy to implement and effectuate Ross F. Charno's unlawful scheme.

180.    Each loan Stanley Spielman made to RFC Securities was unlawfully obtained through the conspiracy of RFC Securities, Ross F. Charno, Irving Charno, and Miriam Charno to commit fraud, undue influence, and overreaching.

*Gale v. RFC*
*Amended Complaint*

181.      RFC Securities, Ross F. Charno, Irving Charno, and Miriam Charno are jointly
and severally liable for the damages they have caused Stanley Spielman as a direct result of their
civil conspiracy to commit fraud.

**Accordingly,** Plaintiff, Stanley Spielman request that this Honorable Court enter Final
Judgment declaring that Irving Charno, RFC Securities, Ross F. Charno, and Miriam Charno
induced Stanley Spielman to make each loan to RFC Securities through fraud, undue influence
and overreaching, that each loan was therefore unlawfully and fraudulently obtained by these
Defendants and that these Defendants had knowledge of and participated in the civil conspiracy
to commit fraud and to implement and further Ross F. Charno's unlawful scheme. Plaintiff,
Stanley Spielman, additionally request that this Honorable Court enter Final Judgment and
therein award damages in their favor and against the Court-Appointed representative of the
Estate of Irving Charno, RFC Securities, Ross F. Charno, and Miriam Charno, jointly and
severally, based upon civil conspiracy to commit and perpetuate fraud through fraudulent
inducement, through the ongoing and organized scheme of misrepresentation of material facts
and the ongoing and organized scheme of omission of and concealment of material facts, award
Stanley Spielman interest and costs and award such further relief or damages which the Court
deems just and equitable.

### Count II: Fraud and Civil Conspiracy to Commit Fraud: Mel Gale

182.      Plaintiff, Melvin Gale, individually and as Trustee of the Melvin H. Gale &
Leona Gale Trust (hereinafter "Melvin Gale"), incorporates and re-alleges Paragraphs 1 through
28, 30 through 39, and 80 through 151 as if fully restated herein.

183.      This is an action by Melvin Gale against RFC Securities, Ross F. Charno,
Irving Charno, Amanda Charno and Miriam Charno for declaratory relief and damages based
upon fraudulent inducement, an ongoing and organized scheme of misrepresentation of material

31

*Gale v. RFC*
*Amended Complaint*

facts, an ongoing and organized scheme of omission of and concealment of material facts, on ongoing and organized scheme of undue influence and overreaching and for civil conspiracy to commit and perpetuate fraud.

184.    Irving Charno was at all times acting in furtherance of the conspiracy to implement and further Ross F. Charno's unlawful scheme.

185.    RFC Securities, Ross F. Charno, Irving Charno, Amanda Charno and Miriam Charno made misrepresentations of material fact to Stanley Spielman as described in this Complaint.

186.    The material misrepresentations specifically included the statements to Melvin Gale that the money Irving Charno was requesting him to deposit into the purported Goldman Sachs escrow account would not be directly traded or invested and that the monies would be maintained in a separate escrow account which would not be accessible or used for any purpose and that the money would be available for return to him on demand after a short notice period.

187.    RFC Securities, Ross F. Charno, Amanda Charno and Miriam Charno confirmed all representations made by Irving Charno both orally and through written communications, as described in the paragraphs incorporated into this Count.

188.    RFC Securities, Ross F. Charno, Irving Charno, Amanda Charno and Miriam Charno continued and perpetuated the original fraud on Melvin Gale in order to induce loan after loan under false and fraudulent pretenses.

189.    RFC Securities, Ross F. Charno, Irving Charno, Amanda Charno and Miriam Charno continued and perpetuated the original fraud on Melvin Gale by omitting the material fact and concealing the material fact that the Defendants were unlawfully transferring, using, converting, stealing and depleting the his money rather than keeping it in the purported Goldman Sachs escrow account.

190.     At the time Irving Charno made the fraudulent statements and at the time the statements were confirmed by Defendants, Defendants never intended to keep the money they obtained from Melvin Gale in the purported Goldman Sachs escrow account.

191.     At the time Irving Charno made the fraudulent statements and at the time the statements were confirmed by Defendants, Defendants secretly intended to use or divert the money for trading, direct investment purposes or for other unlawful uses rather than maintaining the money in the purported Goldman Sachs escrow account.

192.     Irving Charno's statements to Melvin Gale were material to his decision to lend the money to RFC Securities and he reasonably relied on Irving Charno's representations.

193.     RFC Securities and Ross F. Charno's affirmative statements, both oral and written, confirming the material misrepresentations of Irving Charno and RFC Securities and Ross F. Charno's omissions of material facts and the active concealment of material facts regarding the ongoing unlawful use, transfer and depletion of Melvin Gale's monies were material to Melvin Gale's decisions to provide loan after loan to RFC Securities and to Ross F. Charno.

194.     At the time of the material misrepresentations and the material omissions of material facts to Melvin Gale, Defendants secretly intended to use the money for trading or direct investment purposes or for other unlawful uses rather than maintaining the money in the purported Goldman Sachs escrow account and were in fact at the time of the representations unlawfully using, transferring and depleting or diverting Plaintiffs' money.

195.     Amanda Charno and Miriam Charno actively participated in the conspiracy by, among other things, signing their names on correspondence and other agreements, specifically including the various guarantees which were intended to create a false sense of security in Melvin Gale that his money was safe and not being converted, stolen and depleted by

*Gale v. RFC*
*Amended Complaint*

the Defendants.

196.    Melvin Gale was entitled to rely upon and did in fact reasonably rely upon the representations, acts and omissions of Irving Charno, RFC Securities Ross F. Charno, Amanda Charno and Miriam Charno in making each initial loan and in making every subsequent loan to RFC Securities.

197.    The ongoing and organized scheme of misrepresentation of material facts and the ongoing and organized scheme of omission of material facts were the sole and proximate cause of each decision by Melvin Gale to make each loan to RFC Securities.

198.    Had Melvin Gale known that Defendants intended to and were in fact transferring, using, converting and depleting the money they obtained through the loans he would not have made any loan to RFC Securities.

199.    But for Defendants' active concealment of material fact, including Defendants' retention of and refusal to share with Melvin Gale the investment and accounting documents showing the Defendants' unlawful use of his money, Melvin Gale would not have loaned any additional funds to RFC Securities.

200.    Because of the fraudulent behavior, the concealment of material fact, the undue influence and the overreaching by Defendants, the ability of Melvin Gale to negotiate fair terms and make informed decisions as to whether to loan any additional funds to RFC Securities or to demand a return of the money Plaintiffs had already loaned, was undermined.

201.    Because of Defendants' undue influence and overreaching, Melvin Gale's free agency, decision making and willpower were weakened, allowing Defendants to take further advantage of his wealth and obtain loan after loan, while Defendants were unlawfully converting, stealing and depleting or diverting the money he had already loaned to RFC Securities.

202. At the time Defendants made each oral representation and the written representations and omissions in each Confirmation Letter, in each guarantee letter and agreement and in the Note, Defendants knew the money which they were asking Melvin Gale to loan and the money which he had already loaned was intended to and was in fact being unlawfully used, transferred, converted and depleted or diverted from the escrow account wherein the funds were represented to safely remain.

203. Melvin Gale has been damaged by their reasonable reliance on the representations, acts and omissions of Defendants.

204. The facts which Defendants concealed from Melvin Gale caused loss, injury and actual damages to Melvin Gale.

205. The facts which Defendants concealed from Melvin Gale were "existing facts" directly related to Defendants' improper and unlawful use, transfer and depletion or diversion of Plaintiffs' money.

206. The unlawful representations, acts and omissions of Defendants were perpetrated and effected with malicious and felonious intent.

207. Each Defendant had knowledge of and actively participated in furthering the unlawful and criminal acts of Ross F. Charno and participated in implementing and furthering the Ross F. Charno unlawful scheme and thus each Defendant conspired to commit and perpetuate fraud, undue influence and overreaching.

208. The independent civil wrong effectuated pursuant to Defendants' conspiracy is the fraud, undue influence and overreaching described herein.

209. Each Defendant was fully aware of the wrongs being inflicted upon Melvin Gale through the civil conspiracy to implement and effectuate Ross F. Charno's unlawful scheme.

*Gale v. RFC*
*Amended Complaint*

210.    Each loan Melvin Gale made to RFC Securities was unlawfully obtained through the conspiracy of Defendants to commit fraud, undue influence, and overreaching.

211.    Defendants are jointly and severally liable for the damages they have caused Plaintiffs as a direct result of their civil conspiracy to commit fraud.

**Accordingly,** Plaintiff, Melvin Gale, requests that this Honorable Court enter Final Judgment declaring that Irving Charno, RFC Securities, Ross F. Charno, Amanda Charno and Miriam Charno induced Melvin Gale to make each loan to RFC Securities through fraud, undue influence and overreaching, that each loan was therefore unlawfully and fraduently obtained by Defendants and that each Defendant had knowledge of and participated in the civil conspiracy to commit fraud and to implement and further Ross F. Charno's unlawful scheme. Plaintiff, Melvin Gale additionally requests that this Honorable Court enter Final Judgment and therein award damages in their favor and against the Estate of Irving Charno, RFC Securities, Ross F. Charno, Amanda Charno and Miriam Charno, jointly and severally, based upon civil conspiracy to commit and perpetuate fraud through fraudulent inducement, through the ongoing and organized scheme of misrepresentation of material facts and the ongoing and organized scheme of omission of and concealment of material facts, award Melvin Gale interest and costs and award such further relief or damages which the Court deems just and equitable.

### Count III: Conversion of Stanley Spielman's Property and Civil Conspiracy to Commit Conversion

212.    Plaintiff, Stanley Spielman incorporates and re-alleges Paragraphs 1 through 79 and 113 through 181 as if fully restated herein.

213.    This is an action by Stanley Spielman against the Court-Appoimted Representative of the Estate of Irving Charno, RFC Securities, Ross F. Charno, and Miriam Charno (hereinafter, sometimes referred to as "these Defendants") for conversion and for civil conspiracy to commit conversion.

214.     As explained above in Count I, these Defendants, through a civil conspiracy to commit fraud, undue influence and overreaching, unlawfully obtained each loan Stanley Spielman made to RFC Securities.

215.     Further, these Defendants represented and guaranteed that the money obtained through each loan would be held in the purported Goldman Sachs escrow account, would not be traded, would not be accessible by Goldman Sachs or anyone else, and would be returned to Stanley Spielman upon demand after a short notice period of either ninety or thirty days, depending on the specific time in which the loan was made.

216.     Under the terms of each agreement governing each loan of money from Stanley Spielman to RFC Securities, each sum of money is a specific sum of money from an identifiable account, which was represented to remain the property of Stanley Spielman and which was subject to his possession upon demand after a short notice period.

217.     Because these Defendants unlawfully obtained each loan though fraud, undue influence and overreaching, these Defendants unlawfully and wrongfully obtained possession of the funds at the time Stanley Spielman made each loan to RFC Securities.

218.     Because these Defendants unlawfully obtained possession of the funds at the time Stanley Spielman made each loan to RFC Securities, these Defendants misappropriated for their own use and thus committed a conversion of the funds at the time Stanley Spielman made each loan. Despite Stanley Spielman's demand for these Defendants to return the money of Stanley Spielman, they have refused to return his money and have thus converted for their own use the money Stanley Spielman loaned to RFC Securities for placement in the Goldman Sachs escrow account.

219.     In the alternative, in the event it is determined that these Defendants lawfully gained possession of any or all of the Stanley Spielman monies, under the terms of the

agreements between Stanley Spielman and RFC Securities, as confirmed by these Defendants, the money Stanley Spielman provided to RFC Securities through each loan was directed to and was required to be placed and maintained in the purported Goldman Sachs escrow account. The money was restricted and was not to be used for any other purpose. Despite such restriction, Ross F. Charno has stated to Stanley Spielman that all of the money Stanley Spielman loaned to RFC Securities for placement in the Goldman Sachs escrow account was "lost." Because these Defendants unlawfully used, diverted and depleted the money of Stanley Spielman rather than placing or maintaining it in the escrow account, these Defendants have converted for their own use the money Stanley Spielman loaned to RFC Securities for placement in the Goldman Sachs escrow account. Despite Stanley Spielman's demand for these Defendants to return the money of Stanley Spielman, they have refused to return his money and have thus converted for their own use the money Stanley Spielman loaned to RFC Securities for placement and maintenance in the Goldman Sachs escrow account.

220.    In the alternative, in the event it is determined that these Defendants lawfully gained possession of any or all of the Stanley Spielman monies, under the terms of the agreements between Stanley Spielman and RFC Securities, as confirmed by these Defendants, the money Stanley Spielman provided to RFC Securities through each loan was required to be returned to Stanley Spielman upon demand after a short notice period. Despite Stanley Spielman's demand for Defendants to return the money of Stanley Spielman, they have refused to return his money and have thus converted for their own use the money Stanley Spielman loaned to RFC Securities for placement and maintenance in the Goldman Sachs escrow account.

221.    Because Ross F. Charno has told Stanley Spielman that all of the money he loaned to RFC Securities was "lost," and because these Defendants have refused to otherwise return any of the money covered by the loans, these Defendants have embezzled the money of

*Gale v. RFC*
*Amended Complaint*

Stanley Spielman from the escrow account of Goldman Sachs.

222.     Each Defendant had knowledge of and actively participated in furthering the unlawful and criminal acts of Ross F. Charno and participated in implementing and furthering the Ross F. Charno unlawful scheme and thus each Defendant conspired to convert to their own use the money of Stanley Spielman.

223.     The independent civil wrong effectuated pursuant to Defendants' conspiracy is the conversion, with felonious intent, of Stanley Spielman's money.

224.     Irving Charno, RFC Securities, Ross F. Charno, and Miriam Charno were fully aware of the wrongs being inflicted upon Stanley Spielman through the civil conspiracy to implement and effectuate Ross F. Charno's unlawful scheme and to convert, with felonious intent, the money of Stanley Spielman.

225.     Irving Charno (or his estate), RFC Securities, Ross F. Charno, and Miriam Charno are jointly and severally liable for the damages they have caused Stanley Spielman as a direct result of their civil conspiracy to convert the money of Stanley Spielman.

226.     As a direct result of these Defendants civil conspiracy to wrongfully convert to their own use the money of Stanley Spielman, Stanley Spielman has suffered injury and damages in excess of $7,399,131.00.

**Accordingly,** Plaintiff, Stanley Spielman requests that this Honorable Court enter a judgment declaring that Irving Charno, RFC Securities, Ross F. Charno and Miriam Charno wrongfully converted to their own use the money of Stanley Spielman which he loaned to RFC Securities and that each of these Defendants had knowledge of and participated in the civil conspiracy to commit this conversion and to implement and further Ross F. Charno's unlawful scheme. Stanley Spielman additionally requests that this Honorable Court enter Final Judgment and therein award damages of at least $7,399,131.00 in his favor and against the Court-

*Gale v. RFC*
*Amended Complaint*

Appointed Representative of the Estate of Irving Charno, RFC Securities, Ross F. Charno and Miriam Charno, jointly and severally, based upon civil conspiracy to commit conversion, order the these Defendants to disgorge monies wrongfully diverted or retained by Defendants, award Stanley Spielman interest and costs, and award such further relief or damages which the Court deems just and equitable.

### Count IV: Conversion of Melvin Gale's Property
### and Civil Conspiracy to Commit Conversion

227. Plaintiff, Melvin Gale, individually and as Trustee of the Melvin H. Gale & Leona Gale Trust (hereinafter "Melvin Gale"), incorporates and re-alleges Paragraphs 1 through 28, 30 through 39, 80 through 151 and 182 through 211 as if fully restated herein.

228. This is an action by Melvin Gale against Irving Charno, RFC Securities, Ross F. Charno, Amanda Charno and Miriam Charno for conversion and for civil conspiracy to commit conversion.

229. As explained above in Count II, Defendants, through a civil conspiracy to commit fraud, undue influence and overreaching, unlawfully obtained each loan Melvin Gale made to RFC Securities.

230. Further, Defendants represented and guaranteed that the money obtained through each loan would be held in the purported Goldman Sachs escrow account, would not be traded, would not be accessible by Goldman Sachs or anyone else, and would be returned to Melvin Gale upon demand after a short notice period of thirty days.

231. Under the terms of each agreement governing each loan of money from Melvin Gale to RFC Securities, each sum of money is a specific sum of money from an identifiable account, which was represented to remain the property of Melvin Gale and which was subject to his possession upon demand after a short notice period.

232. Because Defendants unlawfully obtained each loan though fraud, undue influence

*Gale v. RFC*
*Amended Complaint*

and overreaching, Defendants unlawfully and wrongfully obtained possession of the funds at the time Melvin Gale made each loan to RFC Securities.

233.    Because Defendants unlawfully obtained possession of the funds at the time Melvin Gale made each loan to RFC Securities, Defendants misappropriated for their own use and thus committed a conversion of the funds at the time Melvin Gale made each loan. Despite Melvin Gale's demand for Defendants to return the money, Defendants have refused to return his money and have thus converted for their own use the money Melvin Gale loaned to RFC Securities for placement in the Goldman Sachs escrow account.

234.    In the alternative, in the event it is determined that Defendants lawfully gained possession of any or all of the monies of Melvin Gale, under the terms of the agreements between Melvin Gale and RFC Securities, as confirmed by each Defendant, the money Melvin Gale provided to RFC Securities through each loan was directed to and required to be placed and maintained on the purported Goldman Sachs escrow account. The money was restricted and was not to be used for any other purpose. Despite such restriction, Ross F. Charno has stated to Melvin Gale that all of the money Melvin Gale loaned to RFC Securities for placement and maintenance in the Goldman Sachs escrow account was "lost." Because Defendants unlawfully used, diverted and depleted the money of Melvin Gale rather than placing and maintaining it in the escrow account, Defendants have converted for their own use the money Melvin Gale loaned to RFC Securities for placement in the Goldman Sachs escrow account. Despite Melvin Gale's demand for Defendants to return the money of Melvin Gale, Defendants have refused to return his money and have thus converted for their own use the money Melvin Gale loaned to RFC Securities for placement in the Goldman Sachs escrow account.

235.    In the alternative, in the event it is determined that Defendants lawfully gained possession of any or all of the monies of Melvin Gale, under the terms of the agreements

41